

EOD
07/26/2012

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **TSC SIEBER SERVICES, L.C.** | § | Case No. 09-61042 |
| xx-xxx4858 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| ENCANA OIL & GAS (USA), INC. | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| STEPHEN J. ZAYLER, Trustee of the | § | |
| Chapter 7 Bankruptcy Estate of TSC | § | |
| Sieber Services, L.C.; | § | |
| DAKOTA UTILITY CONTRACTORS, | § | |
| INC.;  PRICE SUPPLY, INC.; | § | Adversary No. 10-6032 |
| KEY ENERGY SERVICES, INC.; | § | |
| DARBY EQUIPMENT CO., LLC; | § | |
| HOLT TEXAS, LTD. d/b/a Holt Cat; | § | |
| RED BALL OXYGEN CO., INC.; | § | |
| TRANSAMERICAN UNDERGROUND | § | |
| LTD.; and CLEARTRAC, LLC | § | |
| | § | |
| Defendants | § | |

**MEMORANDUM OF DECISION
RESOLVING COMPETING MOTIONS FOR
SUMMARY JUDGMENT (INTERPLEADER)**

This adversary proceeding was filed originally as a statutory interpleader action before

the United States District Court for the Northern District of Texas in Dallas by Encana Oil &

Gas (USA), Inc., as the plaintiff in interpleader, seeking a determination of the rights and

priorities of the various defendants in a construction contract. Currently before the Court are competing motions for summary judgment filed by Stephen J. Zayler, as trustee of the Chapter 7 Bankruptcy Estate of TSC Sieber Services, L.C., the general contractor in this dispute, who claims an exclusive right to all of the interpled funds, as well as five subcontractors, Holt Texas, Ltd. ("Holt"), TransAmerican Underground ("TAUG"), ClearTrac LLC ("ClearTrac"), Red Ball Oxygen Co., Inc. ("Red Ball"), and Darby Equipment Company, LLC. ("Darby"), each of which asserts a right to a portion of the funds.[1] The parties have each tendered extensive summary judgment materials and briefing to the Court and, upon the receipt of all such documentation, the Court took the competing motions under advisement. This memorandum of decision disposes of all matters currently before the Court.[2]

### Factual Background[3]

On March 27, 2008, Plaintiff Encana, a mineral owner and developer of oil and gas leases, contracted with TSC Sieber, the debtor in the underlying bankruptcy case, to build a

---

[1] An entry of default was entered against two of the original defendants, Price Supply, Inc., and Key Energy Services, Inc. on April 29, 2011.

[2] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1335 and §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), (E), (K) and/or (O).

[3] The facts presented are those the Court believes to be uncontested between the parties or are imposed by applicable provisions of claim preclusion. They are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

natural gas gathering pipeline in an area known as the South Hilltop in Robertson County, Texas. The agreement allowed TSC Sieber to hire subcontractors for what became known as the Camp Creek 12-inch Pipeline Project, with the proviso that TSC Sieber would assume responsibility for the payment of those subcontractors solely from the contract proceeds it received from Encana. The agreement provided that, in the event that one of the subcontractors notified Encana that it had not been paid by TSC Sieber, Encana would withhold all sums remaining due under the contract and make no further payments. TSC Sieber subsequently procured the services of each of the subcontractors now named as defendants in this action. It is undisputed that each of those subcontractors provided material, labor, and other services for the pipeline project.

Encana made two payments to TSC Sieber in an aggregate amount of $339,834.00, constituting exactly one-half of the total contract price due to TSC Sieber under the terms of the agreement. TSC Sieber, in derogation of its duties, failed to tender an appropriate share of those payments to each of its subcontractors. Encana was first notified on August 25, 2009 that the subcontractors were not being paid. Under the terms of the agreement governing the transaction and pursuant to its independent duties under Texas law, Encana thereafter withheld all remaining sums due and owing to TSC Sieber under the construction contract. Other subcontractors subsequently reported that they had not been paid as well, thereby multiplying the number of existing claims against the withheld monies.

In order to relieve itself (and its property) of further liability for such non-payment, Encana filed its "Complaint in Interpleader" on September 25, 2009 before the United States

-3-

District Court for the Northern District of Texas (the "Northern District Court"). That interpleader complaint sought a declaration that would insulate Encana from further liability for the unpaid amounts owed by TSC Sieber to its subcontractors based upon its disclaimer of any interest in what Encana termed as the "Interpleader Fund." That fund, which totaled $345,665.50, was tendered pursuant to the requirement of 28 U.S.C. §1335(a) and accepted into the registry of the Northern District Court on October 2, 2009.

On October 17, 2009, TSC Sieber subsequently filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court and a Suggestion of Bankruptcy was filed in the Northern District case on October 30, 2009. TSC Sieber's venture into Chapter 11 ended quickly and its case was converted to one under Chapter 7 on November 2, 2009. Stephen J. Zayler was subsequently appointed trustee of that Chapter 7 bankruptcy estate.

On October 20, 2010, the Northern District Court transferred venue of this action to the United States District Court for the Eastern District of Texas under cause no. 6:10cv00445. Upon the motion of the trustee, the interpleader action was then referred to this Court by order entered on December 6, 2010.

After the dismissal of certain disclaiming defendants,[4] all remaining parties had admitted that the requirements for both a statutory interpleader under 28 U.S.C. §1335 and a rule interpleader under Fed. R. Bankr. P. 7022 had been met. Since Encana, as the disinterested interpleader plaintiff, had tendered all required funds to the registry of the

---

[4]  This list included United Rentals, Inc. [dkt # 35], Star Tractor, Ltd. [dkt #44]; and Dakota Utility Contractors, Inc. [dkt #64].

-4-

Northern District Court and fulfilled all other statutory duties, its request for discharge from this lawsuit was granted on April 12, 2012.  Following the determination that the interpleader action was properly brought, it is proper for the Court to "make a determination of the respective rights of the claimants," *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999), *cert. denied*, 531 U.S. 924 (2000).  Since the parties agree that there are no genuine issues of material fact, the remaining defendants have filed competing motions for summary judgment in support of their respective cross-claims to the interpled funds.

## Discussion

*Summary Judgment Standard*

The competing motions for summary judgment in this adversary proceeding were each brought pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[5]

Each party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

---

[5] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions are decided under the procedures stated therein.

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the ... presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. Each remaining party, in asserting its cross-claim against the others, stands as a cross-plaintiff in its own right. Accordingly, each such party must therefore "support its motion with credible evidence – using any of the materials specified in Rule 56(c) – that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *Tesch v. Prudential Ins. Co.,* 829 F.Supp.2d 483, 492 (W.D. La. 2011).

In this case, the parties have essentially stipulated that there is no factual dispute in need of resolution, that the disposition involves legal interpretations of the applicable statutes, and they have each presented opposing motions for summary judgment based upon application of appropriate law. For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995)["A federal court may resolve the legal

-6-

questions between the parties as a matter of law and enter judgment accordingly."].  That rationale extends to the resolution of competing claims to an interpled fund when there is admittedly no issue of material fact regarding those claims.  *Massachusetts Mut. Life Ins. Co. v. Sanders*, 787 F.Supp.2d 628, 634 (S.D. Tex. 2011).

*The Texas Construction Trust Fund Act*

The subcontractors collectively claim superior title to the Interpleader Fund over the claims of the Trustee through the application of the Texas Construction Trust Fund Act (the "CTFA")  *See* 5 TEX. PROP. CODE ANN. § 162.001(a) *et. seq.* (Vernon Supp. 2011). Supplementing other remedies provided for suppliers and subcontractors in the Texas Property Code, such as the filing of liens under Chapters 53 and 56 therein, Texas courts construe the CTFA broadly to effectuate its remedial purpose – to protect the presumably "exposed" subcontractor or supplier.  *Dealers Elec. Supply Co. v. Scroggins Const. Co., Inc.*, 292 S.W.3d 650, 658 (Tex. 2009).  The Act begins:

> Construction payments are trust funds under this Chapter if payments are made
> to a contractor or subcontractor, or to an office, director, or agent of a contractor
> or subcontractor, under a construction contract for the improvement of specific
> real property in this state.

TEX. PROP. CODE § 162.001(a).  By its own terms, the Act protects materialmen, laborers, contractors, and subcontractors by creating a statutory trust fund for their benefit from payments under a construction contract for the improvement of real property in Texas. The trust divests the holder of any interest in the funds and charges that holder, acting in the role

-7-

of a statutory trustee, with protecting and segregating the funds for the benefit of would-be trust beneficiaries.  Such  beneficiaries need do nothing to secure their respective interests. Unlike the statutory requirements for perfection of a lien by a subcontractor under Chapter 53, neither the Texas CTFA nor the jurisprudence construing it prescribe any procedural prerequisites or conditions.  *In re Lone Oak Fabricators*, 2009 WL 1025092, at *5 (Bankr. E.D. Tex., Apr. 6, 2009) (*citing McCoy v. Nelson Util. Serv. Inc*., 736 S.W.2d 160, 164 (Tex. App.— Tyler 1987, writ ref 'd n.r.e.).  If payments under a construction contract are deemed to be trust funds, entitlement vests "*without regard* to the laborer's compliance with the procedural requirements under Chapter 53." *Exchanger Contractors, Inc. v. Comerica Bank-Tex. (In re Waterpoint Int'l L.L.C.)*, 330 F.3d 339, 345 (5th Cir. 2003) (emphasis in original).

The Trustee, however, argues not that the subcontractors failed to secure their share, but that Encana's withholding of the funds from TSC Sieber and its subsequent interpleader of those funds precludes the creation of a construction trust fund.  The specific language of the Act limits its application to those "payments [] made to a contractor or subcontractor, or to an officer, director, or agent of a contractor or subcontractor." §162.001(a).  This precise limitation imposed by the statute is problematic for the subcontractors because no payment from Encana to TSC Sieber took place.  Following the first notice of non-payment, Encana withheld all remaining unpaid sums pursuant to §56.043[6]  before depositing them with the

---

[6] The Texas Property Code authorizes a property owner, upon receipt of a mineral subcontractor's notice of non-payment, to "withhold payment to the contractor in the amount claimed until the debt on which the lien is based is settled or determined to be not owed." TEX. PROP. CODE §56.043.  Doing so

-8-

Northern District Court.  In his Motion for Summary Judgment, the Trustee urges that the lack

of a qualifying payment by Encana is fatal to the purported creation of a construction trust

funds, arguing that "there is only a construction trust when the funds are held by the general

contractor, which is not the case here.  When no funds have been paid to a putative statutory

trustee, there can be no trust created."[7]  Based upon the plain language of the statute, the

Trustee asserts that Encana's retention of payments and subsequent interpleader into the

registry of the federal district court renders the Texas CTFA inapplicable.

     The Court agrees.  Encana's election to proceed with its interpleader action effectively

precluded the invocation of the construction trust statutes under Texas state law.  Tendering

the Interpleader Fund to the registry of the Northern District under 28 U.S.C. §1335 does not

constitute the "payment" necessary to impress the transferred funds with a statutory trust for

the benefit of the subcontractors.  Indeed, tendering the Interpleader Fund to the registry of

the Northern District Court eliminated the necessity for a construction trust.  The money

interpled is immediately placed under the control of a judicial body and applicable procedures

exist for numerous parties to present their respective claims to the court in an orderly manner.

There is no risk attendant to the interpleading of the funds into a court as there is when

payments under a construction contract are tendered to a contractor or subcontractor that may

---

limits the owner's potential liability to "the amount that the owner owes the original contractor when the notice is received." *Id*.

   [7] Trustee's Motion for Summary Judgment at 5.  That §162.001(a) clearly includes subcontractors as possible payees (and therefore statutory trustees) is of no moment; no payment occurred in this case to a party listed in that section.

elect to divert the tendered funds for its own use, as TSC Sieber did with the first two contractual payments in this case. Thus, the rationales undergirding the need for a construction trust under the Texas CTFA —  insuring the timely distribution of construction contract payments to unpaid subcontractors and preventing the improper diversion or diminution of such payments — are simply inapplicable to the interpleader process. Once placed in the registry of the Court, the danger of a misappropriation of the Interpleader Fund was eliminated. The provisions designed to deter a defalcation by a recipient of a construction contract payment no longer had any application. As a result, though the subcontractor defendants cite to case law construing interpleader as a satisfactory tender in other situations, they did not provide, and the Court's own diligent search could not identify, a single example where the action of interpleading funds into the registry of a court gave rise to a construction trust fund under Texas law.[8] Nor should a court be viewed as a potential statutory trustee, with the attendant risks of liability that attach thereto under the statute.

Had the bankruptcy filing of TSC Sieber not occurred, the Northern District Court would have adjudicated the relative legal rights of the subcontractors vis-à-vis the legal rights held by TSC Sieber. The filing of the bankruptcy petition, however, invoked a superseding principle: the equality of distribution among similarly-situated creditors. *Howard Delivery*

---

[8] Defendants did cite to a Fifth Circuit case from 1986 wherein the court determined that the Georgia common law regarding construction trusts survived the enactment of the Uniform Commercial Code in that state. *See United Parcel Service, Inc. v. Weben Industries, Inc*, 794 F.2d 1005 (5th Cir. 1986). This case differs from *Weben* in that the requirements of a construction trust under Texas law are prescribed unequivocally by statute. One such statutory requirement is that a "payment" occur to one of the named parties in §162.001(a). *See* TEX. PROP. CODE ANN. §162.001(a) (West 2007).

*Service, Inc. v. Zurich American Ins. Co.,* 547 U.S. 651, 667 (2006) ["The theme of the Bankruptcy Act is 'equality of distribution' ...; and if one claimant is to be preferred over others, the purpose should be clear from the statute."]; *American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266, 1274 (5th Cir.1983) [noting that the fundamental bankruptcy policy of "equality of distribution among creditors" permeates almost every provision of the Bankruptcy Code].  While the subcontractors may well could have asserted greater rights to the interpleader funds than that held by TSC Sieber as a viable, independent entity, those rights must necessarily yield to the equality of distribution principle and the equivalent claim to the property of the bankruptcy estate held by other similarly-situated creditors.  Therefore, because there is no construction trust fund invoked under these circumstances under Texas law, the claim of the Trustee, on behalf of the bankruptcy estate and all of its creditors, is superior to that held by the other Defendants as to the Interpleader Fund.

*Asserted Mineral Liens by Holt and TransAmerican Underground*

Even though a construction trust fund under Chapter 162 of the Texas Property Code was not created for the benefit of all of the defendant-subcontractors with respect to the Interpleader Fund, two of the Defendants, Holt and TAUG, assert[9] that their respective filings of mineral lien affidavits under Chapter 56 of the Texas Property Code provide them with a

---

[9] Holt and TAUG initially raised their priority argument as an alternative to one promoting *pro rata* distribution before switching their stance in subsequent pleadings.  The resolution of this issue is necessary to the determination of Holt and TAUG's Joint Motion.

secured status superior to the rights of other unsecured creditors that should be recognized in the bankruptcy process. Holt and TAUG claim that the existence of valid Chapter 56 liens purportedly entitle them to full satisfaction of their claims from the Interpleader Fund,[10] the remainder of which would then be granted to the Trustee as part of TSC Sieber's bankruptcy estate.[11] However, whether Holt and TAUG hold secured claims against the Interpleader Fund requires first a determination as to whether they hold secured claims at all under Chapter 56.

Chapter 56 of the Texas Property Code gives a mineral contractor or subcontractor the means by which to secure a lien against mineral property in order to procure payment for labor or services relating to such property. The premise of the lien mechanism under Chapter 56, as it was under its immediate pre-codification predecessor, TEX. REV. CIV. STAT. §5473, *et. seq.*, is the impoundment of funds in the hands of a property owner who must thereby insure the safety of the funds owed under a contract or risk the imposition of liability for a failure to insure the availability of such funds for payment. As one Texas appellate court stated:

---

[10]  The parties purport to rely on that portion of the Court's "Memorandum Order Discharging Interpleader Plaintiff, Encana Oil & Gas Services, L.C., and Granting in Part and Denying in Part Relief Related Thereto" entered on April 12, 2012 in which this Court preserved the status quo for all claimants to the Interpleader Fund by providing that any properly perfected mineral liens or encumbrances held by the named Defendants would be "transferred to the proceeds constituting the Interpleader Fund held in the registry of this Court *to the same priority and extent they currently exist* against the Robertson County property" (emphasis added).

[11]  Technically, even if Holt and TAUG were correct, the money would still be property of the bankruptcy estate under 11 U.S.C. §541 and still could properly be tendered to the Trustee for payment pursuant to the recognized priorities, although direct payment by the Court from the Interpleader Fund would not necessarily be improper.

Chapter 56 is the statutory scheme for impounding funds in the hands of the mineral property owner, who owes those funds to his contractor for mineral activities by the contractor or subcontractor, through the imposition of a lien. Section 56.002. The lien provided does not create an original indebtedness; rather, the lien is subordinate to the terms of the contract between the owner and his contractor. This obtains because the owner cannot be liable to the contractor for more than their contract price, section 56.006, and he cannot be liable to a subcontractor for more than the amount he owes his contractor at the time he is served with notice of the subcontractor's claim. Section 56.043.

As a result, the owner is liable to a subcontractor only to the extent that he is liable to his contractor; thus, the right to the enforcement of the lien depends upon the state of the account between the owner and his contractor, and not upon the condition of the account between the contractor and his subcontractor, when the owner receives notice of the claim. It follows, as a necessary corollary, that if the owner has paid his contractor in full before notice of the subcontractor's claim is received, then the owner is not liable, and his property is not subject to the lien afforded by chapter 56, for payment of the subcontractor's claim.

*Energy-Agri Products v. Eisenman Chemical Co., Inc.*, 717 S.W.2d 651, 653 (Tex. App. —

Amarillo 1986 (no writ).

Here, as opposed to *Eisenman* in which the owner had paid the contractor in full before

the notice of the subcontractor's claim, Encana took a different course of action.  Instead of

paying the contractor, Encana interpled into the Northern District Court all of the amounts

remaining to be paid by it under the TSC Sieber contract.  It did so as an innocent stakeholder,

unable to determine without risk which of the various claimants were entitled to what portion

**-13-**

of the interpled funds.[12]  By doing so, it eliminated its liability under that contract and effectively precluded the ability of any of the subcontractor-defendants to perfect a lien against its property under Chapter 56 by bringing itself within the safe harbors offered under that chapter by §56.006[13] and §56.043.[14]  It superseded the ability of the unpaid subcontractors to invoke (or, in the instance of TAUG, to complete)[15] the triggering of the Chapter 56 protections by placing a sum equivalent to its remaining contractual liability under the control of a federal district court.  Without an existing liability, no lien could be properly asserted against Encana's property.  Without a lien, the filing of a lien affidavit was a pointless action.

---

[12]  Thus, Encana initiated a traditional interpleader suit — an equitable action available to a party "who is, or may be, exposed to multiple liability or multiple litigation, usually when two or more claims are brought that are mutually inconsistent" and which enables that party "to avoid the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing."  *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 631 (5th Cir. 2002).

[13]  Section 56.006 of the Texas Property Code states that:

> An owner of land or a leasehold may not be subjected to liability under this chapter greater than the amount agreed to be paid in the contract for furnishing material or performing labor.

TEX. PROP. CODE ANN. §56.006 (Vernon 2007).

[14]  Section 56.043 of the Texas Property Code provides a similar limitation in providing, in relevant part, that:

> The owner is not liable to the subcontractor [who serves a lien notice] for more than the amount that the owner owes the original contractor when the notice is received.

TEX. PROP. CODE ANN. §56.043 (Vernon 2007).

[15]  TAUG tendered its notice of lien on August 25, 2009, a little more than one month prior to the receipt of funds by the Northern District Court on October 2, 2009.  It subsequently filed a lien affidavit in Robertson County on November 23, 2009.  *See* Part 5 to Exhibit C attached to Defendants Holt and TAUG's Joint Motion for Summary Judgment.  All of Holt's actions were subsequent to the tendering of the contractual amounts by Encana into the registry of the Northern District Court.

-14-

Since a landowner can be liable to a subcontractor under Chapter 56 only to the extent that he is liable to his contractor, the tendering of the remaining contractual sums owed to TSC Sieber into the registry of the Northern District Court effectively annulled the applicability of the Chapter 56 lien provisions.  Its protections were no longer needed; the remaining amounts due and owing from Encana under the contract had been secured; and Encana's real property was freed from any threatened encumbrance.   Thus, neither TAUG nor Holt ever possessed perfected mineral liens against Encana's property under Chapter 56 of the Texas Property Code that could have possibly transferred to the Interpleader Fund under the Court's prior order.  Accordingly, neither of them hold a secured claim against the Interpleader Fund that grants to them a payment priority higher than the rights held by the holders of other unsecured claims against TSC Sieber.

## Conclusion

Because the act of interpleading the contractual sums due and owing by Encana into the registry of the Northern District Court precluded the applicability of the Texas Construction Trust Fund Act and prevented the creation of a validly perfected mineral lien in favor of TAUG or Holt against the real property of Encana in Robertson County, the superior right to possession of the Interpleader Funds is held by Stephen J. Zayler, as trustee of the Bankruptcy Estate of TSC Sieber Services, LC., for distribution pursuant to the enunciated principles of the Bankruptcy Code.  Accordingly, the Trustee's Motion for Summary Judgment will be granted, the Joint Motion for Summary Judgment filed by Holt Texas, Ltd.

d/b/a Holt Cat and TransAmerican Underground, Ltd. will be denied, and the Joint Motion for

Partial Summary Judgment will be denied.  Appropriate orders and a judgment directing the

payment of the Interpleader Funds to the Trustee shall be entered consistent with this opinion.


Signed on 07/26/2012


THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE